We are now going to move to Appeals 23-1708 and 23-1721, United States v. Prentiss Jackson. And Mr. Capozzi, we'll begin with you for argument on behalf of the appellant. Thank you, Your Honor. Louis Capozzi from Jones Day on behalf of Appellant Prentiss Jackson. The District Court held that Officer Berry could search Appellant Prentiss Jackson's car because the officer had reasonable suspicion there was unburnt cannabis in the car. The government does not really dispute that Officer Berry needed probable cause, and the probable cause analysis at the proper moment of the stop. It is therefore essentially undisputed that the District Court's ruling is legally erroneous. Mr. Capozzi, a question with regard to the record and the facts. The principle brief and the reply brief make reference to the fact that the marijuana was in a plastic bag in the glove box. I've reviewed the transcript as well as the court's decision. I don't see reference to the glove box other than the insurance paperwork being in the glove box. Where does that fact come into the discussion that the marijuana was in a plastic bag in the glove box? Well, if nothing else, I think you can see it from the video. When Officer Berry demands, when he says he's going to search the car, demands cooperation and says, I can cut brakes, now's the time to turn over anything in the car, you can see him take the bag out of the glove box. I see the bag coming out of the window. I do see his passenger next to him. I don't know if the passenger had reached into the glove box or Mr. Jackson reached into the glove box. That's my understanding of what happened. I thought it was Mr. Jackson who reached for it out of the glove box. I don't think the government disputes that this is what happened, and I don't have a clean site from the supplemental appendix for where this comes from, the hearing transcript, but I believe you can see it from the video. You make reference to it at page 42. That's the portion of the transcript at which the discussion occurs, the question occurs about the marijuana. You're relying on the video as the basis for it being in the glove box, and the reason I ask the questions, of course, is it goes to odor, unburned cannabis, whether that's affected by being in the glove box or not. Right. I think you can see from the video that it was in the glove box. However, I don't think that's a dispositive fact in this case. The facts are so extreme in this case, considering the small amount of raw cannabis at issue and the inexperience and lack of training of the officer. It's still just a minuscule two grams of unburned cannabis. It's in the plastic bag. I think the record also shows it was in the glove box, but I don't think that's actually a dispositive fact here. As this court explained in United States v. Kempf, the resolution of a motion to suppress is a fact-intensive inquiry that the district court should ordinarily handle. In the first instance, at minimum, a remand is warranted for the district court to consider whether Officer Berry had probable cause. But this court can also reverse- Mr. Capozza, that's whether Officer Berry had probable cause to search the car, right? And I can see how that might be relevant if Mr. Jackson was being prosecuted for the cannabis. But he's not. And so, why do we even have to look at whether or not there was probable cause to search the car when the discovery of the gun really had little relationship with the car itself? Yeah, I think it's actually a very direct causal line. In Robles-Ortega, this court said that a suppression remedy is warranted for a Fourth Amendment violation for both the direct and the indirect products of an unlawful Fourth Amendment action. And here, it's a very clear causal line. Officer Berry said, I'm going to search you and the vehicle. He demanded cooperation, and he threatened to arrest Mr. Jackson if he did not cooperate with the probable cause search. It was only, as the district court said, when Mr. Jackson, in response to that threat, handed over the small bag of cannabis that Officer Berry had probable cause to believe that Mr. Jackson had committed an offense. And so then, when he orders him out of the car to be searched, Officer Berry has already said before he had probable cause, I'm going to search you. So the gun is hidden on his person. He knows that the gun's going to be discovered, and so he runs. And so that's a very direct, it's both proximate and cause and fact, from the threat to search, the unlawful threat to search his car and his person to the gun being discovered. Well, again, I think that the argument might be a little bit, would be stronger if, in fact, Mr. Jackson didn't run and the gun was discovered when Officer Berry actually searched Mr. Jackson, right? But this is kind of like a law school exam problem, right? But that's not what resulted in the discovery of the gun, right? It was Mr. Jackson running away, tripping, and then the gun falling out. And so I guess I'm still trying to figure out what rule you would have us adopt to determine whether or not something, you know, what is the line of being indirectly causing, right? Yeah, I don't even think this is an indirect causation case. Cases like Robles-Ortega deal with sort of intervening events, you know, like the Wong Sung case dealt with. And Robles-Ortega, after the agents unlawfully entered an apartment, they sat the woman down, they gave her a Miranda warning, and then she proceeded to confess. I think that's a less direct causal line than we have here. Officer Berry says, I think I smell a little bit of weed. I'm going to search you and the car. Searching you, searching Mr. Jackson, means that the gun's going to be found. Mr. Jackson knows this, and so he runs away. But the government cannot profit from an unlawful threat to search his person and the car. So two reasons to reverse. First, under the extreme facts of this case, Officer Berry could not be reasonably confident he smelled a minuscule amount of unburnt cannabis in a sealed plastic bag inside a glove compartment. I believe the video shows that. In its brief, the government emphasizes that this case involves burnt, not unburnt, marijuana. I agree that distinction is important. Courts that have considered the distinction have acknowledged that unburnt marijuana has a substantially weaker smell than burnt marijuana. The Massachusetts Supreme Court in Cruz, for example, explained that unburnt marijuana would need to be present in very large quantities to emit a strong odor. And for that reason, courts have looked at officer claims to smell unburnt marijuana with more skepticism than burnt marijuana. Courts analyzing such claims typically look at two factors, the amount of unburnt marijuana actually at issue and the experience training of the officer. And here, both factors demonstrate, as a matter of law and as a matter of common sense, that Officer Berry could not have been reasonably confident he smelled unburnt marijuana. Mr. Capossi, what relevance in the analysis, if any in your view, is there around the fact that the defendant admitted that he had been smoking marijuana? Well, I think if when we get to the second basis for reversal, you know, the need for plausible, innocent explanations under state law, I think this is more relevant there because that can explain the smell of cannabis in the car in this case, the fact that he smoked earlier in the day. But under state law, that's a lawful activity. So I don't think that, I think that fact helps Mr. Jackson, not the government. Mr. Capossi, play this down the board with regard to the Molina case. Heard by the Illinois Supreme Court, not yet decided. What are the ramifications if Molina decides, goes in the same direction as the appellate decision in that case, or reverses it? Well, it's persuasive authority. At the end of the day, this is a Fourth Amendment case, Fourth Amendment question, it's a federal law question. This court can't defer to the Illinois Supreme Court on how the federal constitution applies and interacts with the state law. And so really the Illinois Supreme Court, you know, it's persuasive authority, but so also are cases like Torgerson from the Minnesota Supreme Court and the many other state Supreme Court and state appellate court cases we cite that consider similar facts and say there's no probable cause in a case like this. And so I don't think the court can be bound one way or the other. Of course, if they reverse the Molina, that's yet one more authority that supports our position. And if they affirm, well then the government finally has a state court authority that supports its position. Mr. Kapossi, what if we had a hypothetical circumstance here in which rather than marijuana, it was a smell of an alcoholic beverage, when the window goes down, what gets passed out is a capped bottle of vodka, an admission by the defendant or the driver that there had been drinking earlier in the day, not drinking in the car. Same result, different result in wine. Yeah, I'm happy that you asked this, Your Honor, because there are cases addressing this question. And I didn't cite them in my brief. I think they support the same argument and they're just more evidence along the lines of, you know, Pinagua and Watson. But states have odorless container laws for alcohol. And the police have argued in these cases, the odor of alcohol gives probable cause to believe a violation of the odorless container law. And every case that I've read considering this fact pattern has said, no, you need corroborating evidence. Two really good case sites I want to give the court on this. State v. Stevenson, 299KAN53, it's the Kansas Supreme Court in 2014. And State v. Burbatch, 706NW2nd484, it's the Minnesota Supreme Court in 2005. And indeed, in Torgerson, which we do cite and discuss, the Minnesota Supreme Court relied on Burbatch and said, this is really the same case. And they rejected the same argument that the government's making in this case. Would you like to reserve the remainder of your time? Well, I'll reserve three minutes. Very good. You can continue then. You know, on the second question, whether you need corroboration when you view behavior that's plausibly innocent, I think that rule is well established by the Supreme Court and in this circuit. The Watson case, which involves an officer seeing someone carrying a gun, that's a very good example. The court said, there's not even reasonable suspicion in a case like that. That is a higher bar for the government. I mean, here, that's a higher bar for us. Here, Watson makes this an aforciare case. I would also direct the court to Penegua, which is the Indiana texting while driving statute. Seeing someone fiddling with their phone in Indiana, this court said, that's not even reasonable suspicion. Without corroboration, that unlawful activity is happening. So, I would urge the court to apply these well-established rules and reverse, at the very least, remand. Unless the court has questions, I will reserve my time. Thank you, Mr. Capozzi. Mr. Keenstra will now move to you for argument on behalf of the government. May it please the court. Good morning, Your Honors. Jeff Keenstra on behalf of the United States. The district court correctly rejected each of the three claims that the defendant made in the district court, all three of which alleged unlawful seizures, not searches. The new claim that the defendant is raising on appeal was not raised in the district court. And the defendant can't show good cause for failing to raise it there, nor can he show either an error or a plain one. And so, beginning with the threshold issue, paragraph 14 of the defendant's motion to suppress identified three specific claims, three specific ways in which he claimed that the encounter here was unlawful. All three of those allege that there was an unlawful seizure, specifically seizures, taking issue with the scope and duration of the seizure. In no respect to the defendant claimed that there was an unlawful search. In fact, the defendant's motion to suppress didn't even acknowledge what he describes on appeal now as the crucial fact or the crucial moment, namely that the officer said he intended to conduct a search. At no point in his motion to suppress did he acknowledge much less build any argument around the officer's statement. So, Mr. Keenstra, so we have the full picture of the record on the motion to suppress. Right. Motion gets filed. That's what you're referencing now. Exactly. It's ultimately heard, and there's a hearing with a transcript that we have. Was there any post-trial briefing? No. Or post-evidentiary hearing briefing? No. There was argument at the conclusion of the hearing, but no briefs following the hearing. And there was also no briefs prior to the hearing, correct? Well, so there was a motion to suppress that offered legal arguments, including the three claims in paragraph 14. The government filed a response, and then at the hearing there was evidence and argument at the conclusion. Did the government's filing prior to the evidentiary hearing in response to the motion to suppress make reference to federal law control? To federal law. Sir, are you referring to probable cause for federal law? Yes. We cited abundant federal case law saying that the odor of marijuana creates probable cause to search the vehicle. Now, we didn't cite the federal statute, Section 844, but there is abundant federal case law, almost none of which distinguishes between federal and state laws of authority. And we squarely presented the core of that argument, that the smell of marijuana inside of a car creates probable cause. Probable cause to believe what crime has been committed? The possession of marijuana. In violation of what law? So... 841A? 844. Okay. Which is the possession statute. Okay. But are you... Simple possession statute. Correct. Okay. But is the United States taking a position... This is what I... I don't know if this is behind... I'll just ask it. Saying, who cares about Illinois law? Who cares? When we pull a car over in this situation, there could be simple possession of marijuana that violates federal law, one. Or two, it's possible that there's possession with intent to distribute distribution quantities of marijuana in the car. In violation of 841A. And that's all Title 21. Doesn't have anything to do with this state or that state. We are absolutely... Is that part of the government's argument? Yes. And that suffices to resolve the appeal under longstanding federal law. Now, of course, we also argue that under the state open container law, there's probable cause because... Before we move off that, though, isn't there a waiver issue here? I understand there's a footnote in your brief to the contrary, but if we do find that there's a waiver on precisely the issue that Judge Scudder is questioning you about, we get into forfeiture, we get into plain error. What's your position then? So our position, first and foremost, there's no waiver of the federal issue. The government expressly argued in the district court that the smell of marijuana created probable cause to search the vehicle. It cited many federal cases to that effect. At worst, there would be a forfeiture. I mean, if there is a shortcoming, it's merely the failure to cite Section 844 in addition to those authorities. The defendant suggests that there was a strategic reason not to rely on marijuana for some prosecutorial discretion reasons, but we expressly argued in the district court that the smell of marijuana created probable cause. So your position is that it's not an attorney general letter or some other type of statement from on high at the Department of Justice indicating, hey, don't prosecute marijuana crimes, because that's referenced by the defense on the record. So the prosecutorial discretion about prosecuting marijuana crimes has nothing to do with the existence of probable cause, which we're talking about here. And I hate to put you on the spot, but you don't happen to have the docket entry for the state's or the government's brief before Judge Bruce on the responding to the motion to suppress. I do. That's at docket entry 20. Thank you. Why don't you guys more express about this? I mean, why is it that we're sitting here talking now about, you know, we cited this and we cited that? I think that's at the heart of the question. Why don't you just come right out and say that whether we prosecute marijuana offenses in light of shifting state law and choices states are making, those are prosecutorial decisions, but they don't affect the question of whether there's probable cause to believe that federal law, at least by its terms, may be violated. Yeah. I take your point. It's always possible to be more specific, certainly on appeals. I think both sides here wish we had done some things differently in the district court. I note that the defendant has shifted their claim much more substantially. They never even claimed in the district court that there was an unlawful search. Now on appeal, they're alleging that there was an unlawful search, whereas their claims before were focused on seizures. And that's very important because that affects the legal standard. The district court correctly recognized that the three claims the defendant actually presented to the district court only required reasonable suspicion because they were only challenging the seizures. And so to be sure, the parties did argue in the district court about whether probable cause existed. So that's been fully fleshed out. But the reason for that was because if there was probable cause, that would plainly justify the entire scope and duration of the seizure. But the challenge to the seizure is a different claim than the challenge to the search because it's a different legal standard at a different point in time during the encounter. Going back to the government's reliance upon potential violation of federal law, is there any place in the record that would indicate that that's something that Officer Berry had in mind when he was conducting, going about his actions? And secondly, if there's not, does it matter? I believe that there is not. His testimony was that he was focused on the state odorless or odor-proof container violation as well as driving while impaired. As to your second question, it does not matter because probable cause is an objective standard that does not require or it does not rely on the officer's subjective intent. So an officer doesn't have to have in mind, I'm conducting this for a specific violation as long as the facts support in retrospect that that violation existed. So if the Illinois Supreme Court says that smell of marijuana alone, whether burnt or unburnt, is not sufficient grounds for a stop or for a seizure or search, under your theory then, the government can, at least to the extent it's prosecuted in federal court, could always come and say, you know what, we don't really care about Illinois law as was referenced earlier because objectively speaking, it's a violation of federal law. So we can disregard what the Illinois Supreme Court has said, at least with regard to federal prosecutions. Is that a correct kind of portrayal of what the government might be able to do under your rationale? That would be a correct statement of the law. I think I agree with Mr. Capozzi's description of that, that the Illinois Supreme Court would be persuasive precedent in this court. It would be, of course, binding in the Illinois courts, but this court is applying the Fourth Amendment. Illinois courts and state courts are free to impose higher standards for admissibility in their own courts. So it's possible that the Illinois court could find that under state law that this is not justified. So there's always a possibility that the admissibility will differ in state as opposed to federal court. But ultimately, it will be for this court to decide as a matter of federal law if probable cause exists under these circumstances. Mr. Keenstra, same hypothetical I posed to Mr. Capozzi concerning the vodka, the smell of alcoholic beverage, passing a capped bottle out the window, admission that they had been drinking earlier in the day. Your thoughts? I think that is probable cause. It's slightly different with alcohol versus marijuana because with marijuana, we have the odor-proof container requirement. So the mere fact that there's odor of cannabis itself coming from inside the car creates probable cause to believe that there is cannabis inside the car and by virtue of the officer's ability to smell it, that it's not in an odor-proof container. But in the alcohol situation, I think the combination of those three facts supports probable cause because we're not looking at any fact in isolation. Probable cause, of course, is a totality analysis. And oftentimes, as in I think Your Honor's hypothetical, the facts would be mutually reinforcing. So the fact that there's a smell plus a container plus an admission, I think would all add up to probable cause. Now here, as the Illinois public courts that have addressed this issue have found, the smell of unburnt cannabis coming from in a car, cannabis itself, so raw or unburnt, creates probable cause to believe that in fact cannabis is inside the car and by virtue of the mere fact that the officer is able to smell it, that shows that it's not in an odor-proof container. And so that itself creates probable cause. And that's exactly what the facts here showed as the district court found. Again, the officer testified that he smelled the odor of unburnt cannabis specifically coming from inside the car when he got to the window. As Your Honors have noted also, to the extent any corroboration were necessary, the officer asked the defendant about it. He said, I smell weed. Have you been smoking tonight? The defendant didn't say, I don't know what smell you're talking about or that's something else. Instead he said, yes, I've been smoking that same night. So it's not even earlier in the day. The officer's question was specifically focused on that night. And paragraph, I'm sorry, page 29 of the transcript, the officer says the admission was having smoked that same night. Well, there's a justification for this probable cause for searching the vehicle. Is that sufficient for search of the person? Or does the officer need some sort of reasonably articulable suspicion that the occupants pose some sort of danger to his safety? For a search of a car, it creates probable cause to search everything inside the car, which would include the people. So the fact that the officer removes the person from the car doesn't mean that he can't conduct the search. Of course, the defendant produced the marijuana itself from inside the car. And Judge Brennan, to your question, the record does not show that it came, that he retrieved the cannabis from the glove box. Page two of the filing of Documentary 16.1, which is the report the defendant submitted with his motion, specifically says the defendant retrieved it from the center console. There's no other evidence of the district court saying it came from the glove box. I note that I've looked at the video many times, and I have a difficult time seeing exactly where he's reaching. But it appears that the glove box is closed at that point. And the only actual reference in the record to where the defendant retrieved it from is that police report, which says that it's in the center console. Now, I think it's important to note the defendant's arguing that there are innocent possibilities or innocent alternatives. Under Illinois law, it is always unlawful to transport marijuana inside of a car outside of an authorized container. And the container has to be secured, odor-proof, and inaccessible. So the fact that an officer is able to smell cannabis inside the car shows that it's not odor-proof, and the fact that it's coming from the passenger compartment shows that it's not inaccessible either. So the fact that the officer smells this doesn't leave open those innocent possibilities. Now, the defendant's primary argument in response, I think, is a credibility attack and a challenge to the district court's credibility findings as to whether the officer actually smelled marijuana. I think that fails for a number of reasons. Here, the evidence before the district court is the officer's testimony. That testimony plainly supported the district court's findings. The officer had extensive on-the-job training from a narcotics officer. He spent three years on the patrol shift in a college town during which he had smelled marijuana on numerous occasions. So the district court didn't plainly err in finding that the officer was able to smell marijuana. And the officer expressly testified that he did recognize unburnt marijuana coming from inside this car. This court has said that that sort of credibility finding can virtually never be fair error, and it certainly isn't here. The defendant's contrary arguments on appeal really don't rely on the record in the district court. They rely on things other courts have said based on the records before them. The defendant relies on a study that was not submitted to the district court. And regardless, that study is really far afield. It tested the ability of a handful of participants who were found from a community bulletin board. And what it modeled was whether cannabis locked in the trunk of a car could be smelled coming through the passenger compartment by a person standing at the driver's window. That really has nothing to do with the circumstances here where, at the very least, the cannabis was inside the passenger compartment. The record, to the extent it shows it, says it was in the center console. On top of that, when the defendant handed the officer the baggie of cannabis, the officer testified that the baggie was emitting a very strong odor. There is also testimony that cannabis of different types may offer or emit different levels of odor. The evidence here is that this particular cannabis was emitting a quite strong odor. So there's nothing at all implausible or impossible, which essentially the defendant would have to show about the officer's ability to smell that. Last, there's the issue about the attenuation doctrine that you had raised, Judge Lee. I see I'm out of time, so I'd be happy to answer any questions about that. But otherwise, the government would rest on its briefs. Thank you, Mr. Keenstra. Thank you. Mr. Capozzi, we'll move to you now for rebuttal argument. Your Honor, parties have to live by their litigation choices. So I want to start with the waiver point. This is a very clear example of waiver on federal marijuana law issues by the federal government. If you read the government's suppression brief below, they do not make a federal law argument once. They do not mention the federal marijuana laws. They cite cases dealing with federal marijuana laws only on their state law argument related to the odorless container requirement. At the suppression hearing, Judge Bruce actually asked, well, what about the federal marijuana laws? And the government counsel during argument noted that question and then immediately pivoted back to state law, refused to make the argument. The federal government knows about the existence and the relevance of the federal marijuana laws. In other states in this circuit, they are expressly making probable cause arguments based on federal law. If we agree with you on the waiver and we move to forfeiture, what's your position? Well, one of the big differences between waiver and forfeiture is you can't forgive a waiver unless it goes to subject matter jurisdiction. You know, Wood v. Maynard from the Supreme Court is a clear example of a case with that rule. Even if this was somehow conceived of as a forfeiture, which is unintentional, it's the exceptional circumstances test from Radford, which the government didn't acknowledge in its brief. They made no attempt to explain why there are exceptional circumstances here. They have forfeited any argument that a potential forfeiture should be forgiven. Really, this is waiver. This is clear-cut strategic decision. They have to live with the consequences of that choice. Mr. Capozzi, can I run a line of reasoning by you that it's far from clear that it's right, but I want you to react to it? Okay. And it's this. You agree with me that the police can order the occupants of the car out under Pennsylvania v. MIM for any reason or no reason? Yes. Okay. And so, if that's right, what is the relevance of any of the colloquy that occurred between Officer Berry and Mr. Jackson? Because, and this is kind of picking up a little bit, it's a different strand of what Judge Lee was asking you. When he got out of the car, he's obviously fully aware he's got a gun in his waistband, so he makes a choice to run at that point. But if on kind of a little bit of harmless error kind of reasoning, him getting out of that car, there's no constitutional infirmity with that under MIMS, regardless of what preceded it, why is that line of thinking, where's the legal error in that? The legal error is that just because in this sort of alternative timeline he could order him out of the car doesn't mean he can frisk him and find the gun. You have to have reasonable suspicion that the person's armed and dangerous in order to frisk. And here, in the transcript, the officer admitted he did not have officer safety concerns. He said, you know, I was looking at the insurance documents for 30 seconds. The lawyer asked, would you have done that if you were afraid? In your view, does the video, Mr. Jackson decided, I mean, aware of the gun in his waistband, right? When he gets up, what is it, it's the back of the car, right? It's in the hood area or the trunk area. He just bolts at that point in time. But he didn't bolt kind of mid-frisk, right? Well, he bolted because Officer Berry had already told him, I'm going to search your person and vehicle. And he demanded cooperation. The government doesn't dispute. You needed probable cause for that threat. And so, Mr. Jackson knows his person is going to be searched. So, another way to put the point you're making, I think, don't let me put the words in your mouth, is that Wren, you know what I'm talking about? Yes. Wren doesn't go so far as to allow you to just change the circumstances like this and analyze it under kind of a harmless error strand of reasoning under MIMS. Well, there's just no harmless error here. The officer said, I'm going to search your person. The government agrees that he needed probable cause to say that. District Court didn't consider that question. Mr. Jackson knows he's going to search my person. He's going to find the gun. He knows that because of the unlawful threat. And so, he runs rather than submit to the search and have the gun be found. He was simply responding to Officer Berry's unlawful threat. So, this is not an attenuated circumstances case. This is direct A to B causation. It's hard to imagine a more straightforward example of that. I mean, cases like Robles-Ortega, which still gave a suppression remedy, substantially more attenuated than here. I see I'm out of time. Thank you, Mr. Capozzi. You and your firm have been appointed by the court. You have the great thanks of the court for all the hard work and time and effort you've placed into the case. The case will take a revisal. Thank you, Mr. Keenstra. We're also going to take a five-minute break.